# MARY O'NEILL v. KANSAS CITY, Appellant.

### Division One, November 25, 1903.

1. **Contused Wound:** EXTERNAL EXAMINATION. The physician testified that "there was a contused wound in the right abdominal region immediately over the right ovary," but made no operation that would have exposed the ovary to his eye. *Held*, that there was no such failure of proof that the ovary was contused, as made erroneous the hypothetical question assuming it to be contused.

2. ———: ———: SCIENTIFIC QUESTIONS. It is incumbent on the court to decide questions of science, yet in matters of obscure science the court looks for enlightenment to counsel.

3. **Objection:** SPECIFIC: HYPOTHETICAL QUESTIONS. An objection to a question propounded to a witness, whether hypothetical or otherwise, should be sufficiently specific to inform the court and opposing counsel of the real point in the objection. And even if the hypothetical question was defective, either in what it contained or in what it omitted, the question will not on appeal be held erroneous, if no opportunity was afforded the trial court to determine in what respect it was defective.

4. **Sidewalk:** REPAIRS BY UNAUTHORIZED PERSON. Testimony that an unauthorized person voluntarily made repairs to a sidewalk at the point where the plaintiff was injured, is not competent to prove that repairs were needed. But if such witness is called for the purpose of proving the condition of the sidewalk at the time of the accident, and, in response to an inquiry in that direction, he incidentally refers to the fact that he did repair it, his testimony is not erroneous.

5. **Excessive Verdict:** INJURY TO WOMAN: $7,500. Plaintiff was a strong active woman, thirty-nine years old, the mother of two daughters, prior to the accident was in the best of health, and had never known disease peculiar to women, or known that she had nerves. She was injured by being struck over the right ovary by the flying up of a plank of a defective sidewalk upon which a large companion had stepped. Since then her strength and activity are gone, her disposition has changed, and she is often "cross and cranky;" she is nervous and suffers at times from nervous exhaustion; two years after the accident she was for eight hours unconscious, and her life is still one of disease and suffering, and the physicians were of the opinion that she would never recover. *Held,* that there being nothing in the record to indicate that a verdict of $7,500 was not dispassionate, the judgment is affirmed.

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis,* Judge.

AFFIRMED.

*L. E. Durham* and *R. J. Ingraham* for appellant.

(1) Plaintiff's hypothetical question asked the medical expert was not based upon the evidence, and the court erred in allowing it to be answered. Turner v. Har, 114 Mo. 345; Zinn v. Railroad, 109 Mo. 142; Smith v. Railroad, 119 Mo. 246; Russ v. Railroad, 112 Mo. 45; Smart v. Kansas City, 91 Mo. App. 586; Mammersburg v. Railroad, 62 Mo. App. 563. (2) The verdict of the jury is so excessive as to show passion and prejudice. Chitty v. Railroad, 166 Mo. 435; Nichols v. Glass Co., 141 Mo. 55; Burdict v. Railroad, 123 Mo. 236; Chitty v. Railroad, 148 Mo. 64. (3) (a) The evidence as to the repairs made to the sidewalk by a stranger subsequent to the accident, is reversible error.

O'Neill v. Kansas City.

Alcorn v. Railroad, 108 Mo. 81; Brennan v. St. Louis,
92 Mo. 482; Mahaney v. Railroad, 108 Mo.; Mitchell v.
Plattsburg, 33 Mo. App.; Bowles v. Kansas City, 51
Mo. App. 416; Corcoran v. Peekskill, 108 N. Y. 156;
Getty v. Town of Hamlin, 127 N. Y. 636; Railroad v.
Hawthorne, 144 U. S. 206; Elias v. City of Lancaster
(Pa.), 13 Am. Neg. Rep. 213.    (b) Defendant's general
objection to such evidence was sufficient.    Alcorn v.
Railroad, supra; Bowles v. Kansas City, supra; State
v. Myers, 99 Mo. 120; Sparf and Hansen v. U. S., 156
U. S. 56; Conner v. Black, 119 Mo. 135; Gubernators v.
Rettalack, 86 Mo. App. 188.

*F. F. Rozzelle, Frank P. Walsh* and *John G. Park*
for respondent.

(1)    The objection that certain facts were omitted
from the hypothetical questions asked Dr. Fulkerson,
is made in this court for the first time.    "No exceptions
shall be taken in an appeal or writ of error to any pro-
ceedings in the circuit court, except such as shall have
been expressly decided by such court."    R. S. 1899,
sec. 864; Id., 1889, sec. 2302.    "Every court is entitled
for its own protection to pass upon objections to evi-
dence.    It will not be charged up with a lot of absurd
rulings which it never made."    Kansas City v. Oil Co.,
140 Mo. 475.    Objections to testimony can not be made
for the first time in an appellate court.    Lumber Co. v.
Rogers, 145 Mo. 449; Rothwell v. Jamison, 147 Mo.
612; Kash v. Coleman, 145 Mo. 649; Sprague v. Sea,
152 Mo. 333; Farber v. Railroad, 139 Mo. 284; Walser
v. Wear, 141 Mo. 463; Adair v. Mette, 156 Mo. 507.
The reason is, that the objections might have been met
by amendments to the hypothetical questions.    Stewart
v. Outhwaite, 141 Mo. 572; Hill v. Drug Co., 140 Mo.
433; Bell v. McCoy, 136 Mo. 559; Burdoin v. Trenton,
116 Mo. 374.    (2) The *quantum* of damage is a ques-
tion for the jury.    When, as here, the verdict is not so

out of line with reason and justice as to shock the con-
science, and to satisfy the unbiased mind that it was
not the result of impartial and unprejudiced delibera-
tion, this court will not interfere.   Perrette v. Kansas
City, 162 Mo. 253.   Numerous cases are found in the
books where female plaintiffs, whose injuries and finan-
cial losses were not as severe as Mrs. O'Neill, recovered
larger verdicts, which were affirmed.   Barr v. City of
Kansas, 121 Mo. 33; Furnish v. Railroad, 102 Mo. 455;
Railroad v. Puntenny, 101 Ill. App. 95; Railroad v.
Doan, 93 Ill. App. 247; Railroad v. Treat, 75 Ill. App.
327; Railroad v. Robinson, 58 Ill. App. 181; Chicago
v. Leseth, 43 Ill. App. 480; Railroad v. Parks, 88 Ill.
373; Smith v. Lorillard Co., 67 N. J. L. 361; Railroad
v. Crowder, 130 Ala. 256; Dolan v. Railroad, 135 Cal.
435; Kraemer v. Railroad, 51 N. Y. App. Div. 475;
Deming v. Railroad, 49 N. Y. App. Div. 493; Groves
v. Rochester, 39 Hun 5; Railroad v. Higby, 26 S. W.
737.   (3) (a) It is undoubtedly the rule in Missouri
that a plaintiff can not prove repairs made by defend-
ant after an accident, to establish defendant's antece-
dent negligence.   Alcorn v. Railroad, 108 Mo. 90.   But
such testimony is admissible to show that the place was
one which defendant was bound to repair.   Brennan v.
St. Louis, 92 Mo. 482; Mitchell v. Plattsburg, 33 Mo.
App. 560.   And, to show that the improvement is one
that might have been made with safety, it may be shown
that defendant actually made it after plaintiff's injury.
Railroad v. Van Horn, 69 Fed. 139.   (b) And where,
as here, the trial occurred long after the accident, it
was admissible to show the subsequent repairs as a
means of fixing dates.   City of Abilene v. Hendricks,
36 Kan. 201.   (c) Even though the testimony be deemed
technically inadmissible, it was proved by plaintiff be-
yond dispute, and by the testimony of disinterested wit-
nesses that the sidewalk in question had been out of
repair for one to three months.   This testimony was not
controverted by defendant.   It is the firmly established

rule in Missouri that where a point is fully established by other and competent evidence, error arising from the admission of incompetent evidence upon it is harmless. Roe v. Kansas City, 100 Mo. 192; Lane v. Lane, 113 Mo. 507; Young v. Hudson, 99 Mo. 106; Hogan v. Railroad, 150 Mo. 51; Sprague v. Sea, 152 Mo. 333; Thompson v. Ish, 99 Mo. 178; Rodney v. McLaughlin, 97 Mo. 430; Singer Co. v. Givens, 35 Mo. App. 611; Julian v. Calkins, 85 Mo. 206; Hoge v. Hubb, 94 Mo. 498; Tuggle v. Railroad, 62 Mo. 428; Reno v. Kingsbury, 39 Mo. App. 244; Leeser v. Boekhoff, 38 Mo. App. 454; Martin v. Block, 24 Mo. App. 62; Muth v. Trust Co., 94 Mo. App. 110; Shaw v. Bryan, 39 Mo. App. 526; State v. Kring, 74 Mo. 632.

VALLIANT, J.—Plaintiff recovered a judgment for $7,500 against the defendant city as damages for personal injuries sustained by her in consequence of the defective condition of a wooden cross-walk in one of the public streets.

The plaintiff's evidence tended to prove as follows: The earth had washed away from the cross-walk on both sides to a depth of about three feet. The boards of which the walk was constructed had become loose and the stringers on which the boards were laid were rotten. The cross-walk had been in this condition two or three months. The plaintiff in company with another woman was crossing the street on that cross-walk, her companion going first and the plaintiff following. Her companion who was a large woman, weighing two hundred pounds, stepped on one end of one of the loose boards and caused the other end to fly up and strike the plaintiff. The board which struck her was a foot wide, two inches thick and fifteen feet long. It struck her just over the right ovary and she was thrown down by the blow. When she got home her knee was bleeding and there was a dark spot over the ovary where the board struck her, which by the next morning had be-

come large and black.   She was a married woman, had had several children and was thirty-nine years old. The testimony tended to show that her injuries were very serious and painful and her suffering was still enduring at the time of the trial.

As grounds for reversal of the judgment, appellant presents three propositions:

1.   The court erred in permitting an expert witness to answer a certain hypothetical question.

2.   The court erred in allowing a witness, who was not in the employ of the city, to testify that he made repairs on the cross-walk, shortly after the accident.

3.   The amount awarded as damages is excessive, evincing prejudice or passion.

I.   The hypothetical question to which objection is made was propounded to a physician who had examined her just before the trial, which was four years after the accident, and who had testified that he found her suffering with ovaritis.   The question, the objections and the rulings thereon are as follows:

"Doctor, suppose that on the 9th day of June, 1896, this lady you have examined, Mrs. O'Neill, was thirty-nine years of age, and up to that time she had not been sick, was in good health, her last sickness being an attack of bilious malaria along in the year 1888 or 1889; that intervening between that time she was able to perform her household duties, and was in good health and had not any pains in her body, and on the 10th day of June, 1896, she met with an accident in which she received a blow over the ilium on the right side over the organ of the right ovary; that this blow caused a part of the right side to swell and left the ovary bruised and contused; that immediately thereafter she suffered acute pain in the region of the organ of the right ovary, and ever since that time has suffered pain in that organ and not upon the left side; that prior to that time she did not suffer from nervousness, but since that time she

has suffered with nervousness; that her nervousness has continued and has become very serious; that she has become so nervous at times that it has resulted in nervous prostration; that it has come on in periodic times; that she was confined to her bed for four months; that she still suffers pain in the region of this bruised place that I have detailed to you: was that ovaritis the result of the blow I have indicated?

"Mr. Hadley, counsel for the defendant, objects to the question, as no such facts are found in the evidence.

"Court: Objections are overruled.

"Mr. Frank P. Walsh, counsel for the plaintiff: If Mr. Hadley, counsel for the defendant, will suggest any evidence that has not been covered by the question or any evidence submitted by hypothesis, that had not been given in the evidence, I will amend my question to conform thereto.

"Court: Mr. Hadley, if you have any amendments to offer, you will please make them.

"Mr. Hadley: I do not desire to do so at this time.

"To which action of the court in overruling said objection the defendant then and there excepted.

"A. Well, assuming these to be the facts, I would say the blow was what produced the ovaritis.

"Q. Assuming these facts to be true, as I have detailed them to you, I will ask you whether or not that condition of the lady is reasonably certain to be permanent and lasting?

"Mr. Hadley, counsel for the defendant, objects to the question, as no such facts have been shown in evidence.

"By Mr. Walsh: If counsel for defendant will suggest any evidence that has not been covered by the question, or any evidence submitted by hypothesis, not given in evidence, I will amend my question to conform thereto.

"By the Court: Mr. Hadley, if you have any amendments to offer, please make them.

"By Mr. Hadley: I do not desire to do so at this time.

"By the Court: The objection is overruled.

"To which ruling of the court, the defendant by its counsel at the time duly excepted."

The objection to the question was based on the ground that "no such facts are found in the evidence."

There was evidence of every fact assumed in the question, unless it was in relation to the one fact which we will presently mention, and as that is the only fact assumed in the question which the counsel for appellant in their brief contend was not supported by any evidence we deem it unnecessary to set out the evidence relating to the other facts.

The part of the question which the learned counsel think assumes a fact with no evidence to support it is, "that this blow caused a part of the right side to swell and left the ovary bruised and contused."

The plaintiff testified that when she reached her home immediately after the accident, her knee was bleeding and there was a dark spot over the ovary where the board had struck her, and by the next morning it had become large and black. The physician who came next morning to see her testified "that there was a contused wound in the right abdominal region immediately over the right ovary." The tendency of all the testimony relating to her affliction was to locate the pain, injury and disease in the right ovary. Although it does not appear that an operation was performed which would have exposed the ovary to the eye of the surgeon and thus have enabled him to say that he saw its contused condition, and in that sense there was no evidence of the contusion, yet, in so far as we are enabled to judge of the scientific subject in the light of such evidence as we have, we are not prepared to say that the

appearance of the injury as shown in evidence, obtained from the outside examination by the attending physician and the testimony of the patient herself, did not justify the counsel, framing his question, in assuming that there was evidence tending to show a bruised condition of the ovary.

But it is argued that the question left out certain facts which were shown in the evidence, in relation to her condition, and for that reason the question was improper. There was no objection made to the question on that ground. The only ground of the objection made was that no such facts as those assumed in the question were to be found in the evidence.

Whether the facts which appellant now contends ought to have been included in the hypothetical case propounded, were essential to a proper understanding of the case by the learned witness, is itself a scientific question, and whilst it is incumbent on the court to decide questions of science, yet in matters of abstruse science the court looks for enlightenment to the counsel in the case. If there is any reason in science why the physician to whom this question was propounded could not intelligently answer it without the addition of the facts now suggested, or why his answer to a question embracing the additional facts might have been different, or why as a scientific proposition those additional facts should influence the witness's opinion on the case, we feel sure the learned counsel for the appellant would have given us that scientific reason and have made it clear to us. But they suggest no such reason and we perceive none. The physician had testified from his own examination of her that the woman was suffering with ovaritis, that is, inflammation of the ovary; the object of the hypothetical question was to learn whether or not in his opinion the blow she had received was the cause of the diseased condition in which he found her. We think the facts assumed in the question are sufficient for that purpose and that the

other facts suggested would have thrown no additional light on the subject.

When an objection is made to a question propounded to a witness, it should be sufficiently specific to inform the court and opposing counsel of the real point in the objection. In this respect there is no difference between an objection made to a hypothetical question and one made to any other question. [Rogers on Expert Testimony (2 Ed.), p. 67; Stearns v. Field, 90 N. Y. 640.]

In this case the objection was so general that it did not give the trial court any oportunity to know what, in the opinion of the counsel making it, was the vice of the hypothetical question, either in what it contained or what it omitted; and when invited to specify his objection he declined to do so. Even if we were satisfied that the hypothetical question was defective in the particulars now urged, we would not be authorized to adjudge that the trial court had committed error in allowing it, since no opportunity was afforded the trial court to pass on the objection.

II. A witness who had made some repairs on this cross-walk was called by the plaintiff to testify in regard to its condition at the time of the accident. He was not in the service of the city, but was a friend and neighbor of the plaintiff, lived near the scene of the accident, and, after she was hurt, took it upon himself to repair the cross-walk. In answer to a question as to the condition of the cross-walk, he mentioned the repairs that he had made. Defendant moved to strike out that part of his answer; the motion was overruled, and exception taken. That ruling is now assigned for error.

The witness had stated that he was familiar with the crossing, had been so for months, and went there very shortly after the accident to repair it. He was asked: "Q. In what condition did you find it when

you went there? (Objected to as incompetent, irrelevant and immaterial; overruled and exception).   A. I found the planks loose at both ends—the east and the west end.   I found the stringers at the east end very much decayed, and I sent the boy back to the house and made him bring two pieces, and we substituted those pieces of stringers for the rotten stringers at the east end.   What we did at the west end I can't recollect so well, but I remember the east end of the stringers was rotten and decayed.''

Testimony tending to show that an unauthorized person made repairs, is not competent to prove that repairs were needed.   But the object of this witness's testimony was not to prove that he made repairs; no such question was asked him and his reference to the repairs was merely incidental to the main fact to which he was testifying, that is, that the cross-walk was in bad condition.   What he said about the repairs added nothing to the force of what he said about the condition. If the mere fact that repairs had been made was shown for the purpose of drawing therefrom the inference that the cross-walk was in bad condition, the testimony would present a different question.   But no such inference could be drawn from this testimony, for the reason that nothing was left for inference.   The same witness who testified to the repairs left nothing to be inferred therefrom, but testified expressly to the condition. What he said in reference to the repairs could add nothing to what he said in reference to the condition. He said it was in bad condition, and in the same breath that he repaired it.   It was a mere voluntary injection by the witness of a statement not called for by the question which, in the connection in which it was used, could add no probative force to what he said on the real point to which his testimony was addressed; it was but an incidental statement of an immaterial fact.   It can not be said that the defendant was prejudiced by the witness's statement of a fact from which an inference of another

fact might be drawn, when in the same breath the same witness expressly states the ultimate fact, not as a matter of inference but as of his personal knowledge.

But the fact that this cross-walk was badly out of repair was proven beyond controversy by several witnesses, and there was almost no testimony to the contrary. Even if the testimony relating to the repairs should be adjudged incompetent, we could not say it was such error to have received it as would justify the reversal of the judgment, because it could not possibly have "materially affected the merits of the action." [Sec. 865, R. S. 1899.]

III. The remaining assignment of appellant relates to the amount of damages assessed by the jury.

The testimony showed that, until the accident, the plaintiff had always enjoyed the best of health. She was a strong active woman, thirty-nine years old, the mother of two daughters, had never known disease peculiar to women, had never experienced "that she had nerves," she engaged every day in the active duties of her household, and of the duties and pleasures appertaining to her as the mother of daughters under her care. But since the accident that has all been changed. Her strength and activity are gone, even her disposition has changed, and she is often "cross and cranky," she is nervous and suffers at times from nervous exhaustion. Pending the suit at the request of the defendant she went before an officer to give her deposition and gave it, but the strain on her proved greater than her strength could endure, and on her way home she fell ill and was taken into the house of a stranger and a physician called. She was ill for a week from that cause. In July, two years after the accident, she had a spell of unconsciousness which lasted from nine o'clock in the morning until five in the afternoon. Her life since the accident has been one of disease and suffering. At the time of the trial, which was four years

after the injury, she was still suffering from chronic inflammation of the ovary with serious resulting consequences to her whole system. Her physician, and the physicians who were appointed by the court to examine her just before the trial, were of the opinion that she would never recover.

The jury saw the woman and heard the evidence; they were of the opinion that $7,500 was reasonable compensation for that which she had suffered and for the loss of her health and strength. There is nothing in the record to show that this was not the dispassionate judgment of the jury.

The award does not seem to us to be so excessive as to justify us in invading the jury's peculiar province, and we will not disturb it.

The judgment is affirmed. All concur.