Thomas Scott **NIELSEN**, a minor, by his father and next friend, Ralph A. Nielsen, Plaintiff-Respondent,

v.

Martha **DIERKING**, Administratrix of the Estate of George S. Dierking, Deceased, Defendant-Appellant.

No. 52256.

Supreme Court of Missouri, Division No. 2.

Sept. 11, 1967.

John R. Gibson, Byron J. Beck, Morrison, Hecker, Cozad & Morrison, Kansas City, for plaintiff-respondent.

Thomas E. Deacy, Jr., Joseph A. Sherman, Joseph W. Amick, Deacy & Deacy, Kansas City, for defendant-appellant.

FINCH, Presiding Justice.

The jury returned a verdict for defendant in a suit wherein plaintiff sought $350,000 for personal injuries received when he was run over by a school bus operated by defendant's decedent. The trial court sustained plaintiff's motion for a new trial and defendant appeals.

The trial court assigned two grounds for sustaining plaintiff's motion for a new trial. Both concerned the admission of certain evidence by the trial court and involve the doctrine which permits the admission into evidence of prior consistent statements for the purpose of rehabilitation of the witness when that witness has been impeached by proof of statements inconsistent with his trial testimony. Plaintiff does not seek to sustain the action of the trial court on any other basis. The limited issues involved necessitate a resume of only a portion of the evidence.

The occurrence in controversy took place on December 11, 1962, a short distance east

of the intersection of Oak Street and 108th Terrace in Kansas City. Plaintiff, then seven and one-half years old, was a student at Red Bridge Elementary School located one block north of the intersection in question. A school bus belonging to and operated on behalf of defendant's decedent turned left from Oak Street onto 108th Terrace, and just east of the intersection its wheel or wheels ran over plaintiff, resulting in very serious injuries, including complete paralysis of the body below a point just above the waist.

Plaintiff testified that when he ran across 108th Terrace he had not seen the school bus. When he got to the middle of the street, he stopped and somehow fell down. He then saw the bus coming around the corner from Oak Street and it ran over him.

Defendant pleaded contributory negligence and sought to show that the plaintiff ran into the side of the bus and slipped or fell under the left rear wheel. One witness for defendant was Mrs. Ilean Withrow. She testified that after stopping at the school to pick up children, she drove south on Oak Street and was the second or third car behind the school bus. The bus made a complete stop at the corner and then swung very wide to make the turn onto 108th Terrace. At the time, Mrs. Withrow saw children on the northeast corner of the intersection with a safety patrol boy in front of them holding his arm out. When the bus made its turn onto 108th Terrace, there was nothing in the street in front of the bus. Mrs. Withrow continued straight ahead on Oak Street. She observed that the bus stopped and as she crossed the intersection she saw children in the middle of the street on 108th Terrace. She then stopped her car and went back to see what was wrong. Plaintiff was lying in the middle of the street. A man picked him up and carried him into a house where he was placed on a couch. Mrs. Withrow followed into the house. The boy was trying to talk but was told to lie still and say nothing. Mrs. Withrow stated that the boy still

talked and said, "I slipped and fell under the bus." She further testified that she saw a Mrs. Leighton in the house, to whom she remarked, "Do you suppose the bus ran over the boy?" and Mrs. Leighton replied, "Yes, I seen him slip and fall under the left rear wheel."

On cross-examination, Mrs. Withrow admitted that a Mr. North, an attorney for plaintiff, and a woman reporter with a stenotype machine came out to question her on January 7, 1963. A transcript of the stenographic notes was identified as plaintiff's Exhibit 11, and Mrs. Withrow was asked about a number of questions and answers appearing in that stenographic report. She indicated that she did not believe that certain answers therein were given by her, and said something about her answers having been rearranged but she declined to say that the stenographer had rearranged her answers, and when shown specific questions and answers on the stenographic report conceded that such questions were asked and the answers given. Certain answers contradicted testimony given by Mrs. Withrow on direct examination. For example, she had stated to Mr. North that she did not see the bus make the turn and she assumed it turned left from Oak Street onto 108th Terrace because it had to. The transcript indicated that she stated to Mr. North that when she saw the bus it was parked. She further stated that when plaintiff was lying on the couch in the house, he did not say how the accident happened. There were certain other variances from her testimony at the trial, but we need not detail them herein. Plaintiff's Exhibit 11, which was the stenographic report, was offered and received in evidence.

On redirect examination the defendant established by Mrs. Withrow that a Mr. Sherman, one of the attorneys for defendant, had taken a longhand statement which she verified and signed. It bore the date of July 2, 1963, and was identified as defendant's Exhibit 12. Over objection that this exhibit was not admissible as a prior consistent statement since it had been given

after the impeaching statement given in January of 1963, the defendant's Exhibit 12 was received in evidence by the court as a prior consistent statement.

Another witness called by defendant was Marilyn K. Meyer, a sixth-grade student at Red Bridge School at the time of the accident. Marilyn testified that on the afternoon in question she was a passenger on the school bus and was seated next to the window on the driver's side about three seats from the rear. The bus went south on Oak Street. It stopped on 108th Terrace and then turned east onto 108th Terrace. Marilyn saw plaintiff standing on the sidewalk at the corner at a time when the school bus was about halfway through its turn. The front of the bus had gone beyond the crosswalk at the time when she saw Tommy step off the sidewalk but she saw nothing after that.

On cross-examination, Marilyn was asked if a Mr. Beck came to see her in February 1963 to talk about the accident. She stated that he had not been to see her and she had talked only to Mr. Sherman. Plaintiff had a statement, marked as his Exhibit 12, at the bottom of which Marilyn identified her signature and the signature of her mother, which read, "The above statement was made in my presence. Mrs. W. W. Meyer." She insisted, however, that Mr. Beck had never talked to her and she did not recall the statement at all. She did not recall saying, "I did not see Tommie Nielsen before the accident, and don't know what part of the bus hit Tommie," which appeared in the statement. Said plaintiff's Exhibit 12 was offered in evidence by plaintiff.

On redirect examination, Mr. Sherman, for the defendant, developed by Marilyn that he had talked to her in June of 1963 and she gave him a written statement dated June 14, 1963. It was marked as defendant's Exhibit 15. Mr. Sherman then proceeded to read from the statement to the witness and asked her if the statements were right. Plaintiff objected on the basis that this was an attempt to rehabilitate the witness with a statement given later than the impeaching statement received in evidence, but the objection was overruled and the answer received. In this manner, the exhibit was read to the jury but it was not formally introduced as an exhibit.

■ Missouri cases have established the rule " * * * that when a witness has been impeached by *proof* of his statements inconsistent with his trial testimony, prior consistent statements are admissible into evidence for the purpose of rehabilitation." Stafford v. Lyon, Mo., 413 S.W.2d 495, 498. See also Piehler v. Kansas City Public Service Co., 360 Mo. 12, 226 S.W.2d 681. However, for the statement to be admissible in evidence as a prior consistent rehabilitating statement, it must have been made *prior* to the impeaching statement. The rule was stated by Judge Tipton in State ex rel. Berberich v. Haid et al., 333 Mo. 1224, 64 S.W.2d 667, 669, as follows: "We have uniformly ruled that, where the rehabilitating statement was made prior to the impeaching statement, such a statement may be properly admitted for the purpose of rehabilitating the witness, and that, where the rehabilitation is subsequent to the impeaching statement, it is not admissible and it is reversible error to admit it in evidence." Subsequent cases reaffirming this rule are Ayres v. Keith, Mo., 355 S.W.2d 914, 921–922 and Quinn v. Berberich, Mo.App., 68 S.W.2d 925, 926. See also the earlier case of State v. Creed, 299 Mo. 307, 252 S.W. 678, 681 [2], for a discussion of the rule.

Under the cases above cited, if Mrs. Withrow's statement to Mr. Sherman (defendant's Exhibit 12) was given *after* the interview with Mr. North (plaintiff's Exhibit 11), which was the impeaching statement, it was inadmissible as a matter of law.

The evidence with reference to the time when the statements were given was as follows: Each of the written documents bore a date. Plaintiff's Exhibit 11 was dated January 7, 1963, and defendant's Exhibit 12 was dated July 2, 1963. Mrs.

Withrow, on cross-examination, testified that Mr. North and the reporter came to see her on January 7, 1963. She testified that it was on July 2, 1963, that she talked to Mr. Sherman and gave the statement to him. She further testified that this was six or seven months after January 7, 1963, when she had talked to Mr. North. Subsequently, on the second round of redirect and re-cross-examination, Mrs. Withrow stated that plaintiff's Exhibit 11 was made within a week, or two or three days, after the handwritten statement to Mr. Sherman, but she did not fix particular dates. The reporter who accompanied Mr. North, Mrs. Olive Gillette, testified in rebuttal that her records indicated that the statement of Mrs. Withrow which she reported was taken on January 7, 1963. Defendant argues that since there was testimony by Mrs. Withrow that she gave plaintiff's Exhibit 11 somewhere between two or three days, or a week, after she gave defendant's Exhibit 12 to Mr. Sherman, there was evidence to support the admissibility of defendant's Exhibit 12 as a prior consistent statement, and having been admitted, it was admissible as a matter of law and the trial court could not correctly grant a new trial on the basis that the court erred in admitting the exhibit. In effect, defendant argues that, having once decided the issue of admissibility of the statement, the court may·not, on motion for new trial, change its mind about which of the instruments was executed first, and consequently may not grant a new trial for an error in originally admitting the document, if there is any evidence at all to justify admission of the exhibit when offered. We do not agree with this contention, as we hereinafter show.

Actually, the remarks of the trial court made when he first admitted defendant's Exhibit 12 in evidence do not indicate that he was holding that defendant's Exhibit 12 was executed prior to plaintiff's Exhibit 11. They seem to infer the contrary. When counsel for plaintiff objected that the statement was not a prior consistent statement

to the impeaching statement given in January, the trial court·said, "Well, it is a prior consistent statement with respect to what she testified to on the stand." This would indicate that the court was admitting the statement on the basis that if given prior to the date of trial and consistent with the testimony of the witness at the trial, the statement was admissible as a prior consistent statement regardless of whether it was executed before or after the impeaching statement. The Missouri cases, as we have indicated, do not support admissibility on that theory.

Be that as it may, it is apparent that on consideration of the motion for new trial the trial court concluded and necessarily held that plaintiff's Exhibit 11 antedated defendant's Exhibit 12. An examination of Assignment 13 in plaintiff's motion for new trial discloses without question that it is predicated on the factual basis that plaintiff's Exhibit 11 was executed prior to defendant's Exhibit 12, and that consequently the latter could not be a prior consistent statement and admissible as such. The trial court in granting a new trial stated that he did so "for the reasons set forth in paragraphs 13 and 19 of plaintiff's motion for new trial." It is true, as defendant contends, that the question of whether evidence is admissible is a question of law for the court to determine. That is true on appeal and likewise is true in the trial court. The question of whether a prior consistent statement is admissible in evidence for purposes of rehabilitation is a question of law, the resolution of which is dependent on the determination by the court of the factual question of which statement was executed first. "It is the function of the trial judge to determine all matters of fact upon which the admissibility of evidence depends, * * *." Ashley v. Williams, 365 Mo. 286, 281 S.W.2d 875, 879. Defendant asserts that since there was evidence that the prior consistent statement given Mr. Sherman was made prior to the statement to Mr. North, it was admissible as a matter of law. This is not true. It

is admissible if, and only if, the court finds as a fact that it was made prior to the impeaching statement. The circumstance that the trial court first ruled the exhibit admissible in evidence does not mean that it cannot conclude subsequently, on a motion for new trial, that the facts justify and compel a different conclusion than the one originally reached. The trial court has a right, on the motion for new trial, to review the question of whether the evidence disclosed that defendant's Exhibit 12 preceded or antedated plaintiff's Exhibit 11, and where, as here, the evidence certainly justified such a conclusion, the court had the right to find that the rehabilitating statement (defendant's Exhibit 12) was executed after rather than before the impeaching statement. Having made that determination, the court properly concluded that the admission of defendant's Exhibit 12 was erroneous and that a new trial should be granted on that account. The determination by the trial court of the preliminary factual issue involved in the question of admissibility will not be disturbed on appeal unless there has been an abuse of judgment or discretion amounting to error of law. Nibler v. Coltrane, Mo., 275 S.W.2d 270 [7]. We find no such error. See also Tate v. Giunta, Mo., 413 S.W.2d 200.

Defendant cites and relies particularly on Simpson v. Terminal Railroad Ass'n of St. Louis, Mo., 357 S.W.2d 65. The sole question there was whether the testimony of a witness as to the presence, actions and statements of three men was circumstantially relevant to the issue of whether an alleged accident for which suit was brought was staged or genuine. The court held it to be relevant, l. c. 68, " * * * because it was sufficient to permit a reasonable inference by a jury that the three men were three of the four allegedly in the automobile at the time it was struck." The evidence was relevant to the issue of identity to be determined by the jury and, consequently, was admissible as a matter of law. Its admission was not a basis, therefore, for the trial court to grant a new trial. That

is not comparable to the situation here and the case is not controlling.

Defendant next makes the point that plaintiff failed to make timely objection to the testimony of Mrs. Withrow given before her statement (defendant's Exhibit 12) was received in evidence, and consequently that plaintiff waived objection to the admissibility of defendant's Exhibit 12. We have read the record carefully and do not agree. Plaintiff, almost immediately after defendant's Exhibit 12 was marked as an exhibit, sought to ask a preliminary question for the purpose of making objection thereto, but the court told him to wait until the statement was offered in evidence. When the statement was offered, plaintiff, by a preliminary question, established for the first time that defendant's Exhibit 12 was dated subsequent to plaintiff's Exhibit 11, and promptly made a proper objection, which the court overruled. In addition, defendant sought to have Mrs. Withrow testify that what she said in Exhibit 12 was consistent with what she had testified to, and the court sustained plaintiff's objection thereto and instructed the jury to disregard that testimony. We find nothing in the other preliminary testimony of Mrs. Withrow which, in our judgment, would serve as a basis for holding that plaintiff failed to make timely objection and thereby waived the right to object to defendant's Exhibit 12. Consequently, defendant's cases relating to failure to object are not applicable.

Next, defendant asserts that she was entitled to introduce defendant's Exhibit 12 because defendant was surprised by the statement of Mrs. Withrow on direct examination that the facts recited in plaintiff's Exhibit 11 were true "now." It is evident from the transcript that this was not a case of surprise. The witness was not antagonistic or unfriendly to defendant. Defendant did not seek to cross-examine or impeach Mrs. Withrow. Rather, the attempt was to rehabilitate her after she was impeached. The objection made to the exhibit and the remarks of the court so show.

Defendant's Exhibit 12 was not admissible on the basis of surprise.

Another asserted basis for admissibility of defendant's Exhibit 12 is that the cross-examination of Mrs. Withrow tended to impute improper motives or influences on her to fabricate her testimony at the trial. Earlier Missouri cases, as well as cases from other jurisdictions, are cited by defendant. Some of those cases are mentioned in an Annotation in 140 A.L.R. 21, 129, which discusses admissibility of prior consistent statements and comments that there was much confusion on the subject in earlier Missouri cases. More recent cases in Missouri have made no reference to the question of charges of recent fabrication or improper motives and have predicated admissibility of prior consistent statements following proof of impeachment on whether the statement was prior to or subsequent to the impeaching statement. Some jurisdictions do permit introduction of prior statements when fabrication or improper motives are imputed, but we see no reason to change our rule. Actually, the cross-examination in this case does not seem unduly severe, nor does it imply fabrication or improper motives any more than in almost any case where a witness is impeached by prior inconsistent statements. We overrule this contention.

Somewhat similar, although not identical, issues are involved with reference to the witness Marilyn K. Meyer. She, too, was impeached by her earlier written statement and the defendant sought to rehabilitate her by means of a longhand statement which she had given to Mr. Sherman. The impeaching statement was dated February 2, 1963. The rehabilitating statement given to Mr. Sherman was dated June 14, 1963. There was no evidence here that the latter preceded the former. Rather, defendant's contention is that the plaintiff waived objection to the testimony with respect to the rehabilitating statement (defendant's Exhibit 15) and did not make proper objection thereto. It would serve no useful purpose to detail the testimony and our conclusions because plaintiff is entitled to a new trial on account of the admission of defendant's Exhibit 12 in evidence, regardless of the conclusion reached on the question of the propriety of granting a new trial for error in admitting rehabilitating testimony with respect to Marilyn K. Meyer.

The action of the trial court in granting a new trial is sustained and the cause remanded.

All of the Judges concur.